UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LISA EDWARDS,

                Plaintiff,

          - against -

JERICHO UNION FREE SCHOOL DISTRICT,
JERICHO UNION FREE SCHOOL DISTRICT
BOARD OF EDUCATION, HENRY L. GRISHMAN,
in his official capacity as Superintendent and
individually, BENJAMIN CIUFFO, in his official
capacity as Assistant Superintendent and individually,
BARBARA BAUER, in her official capacity as
Assistant Superintendent and individually, JOSEPH
PRISINZANO, in his official capacity as Principal
and Individually, and ANTONY SINANIS, in his
official capacity as Principal and individually,

                Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
11 CV 3261 (DRH) (WDW)

**APPEARANCES:**

**DANDENEAU & LOTT**
Attorneys for Plaintiff
425 Broadhollow Road
Suite 418
Melville, New York 11747
By:    Dawn A. Lott, Esq.

**INGERMAN SMITH, L.L.P.**
Attorneys for Defendants
150 Motor Parkway
Suite 400
Hauppauge, New York 11788
By:    David F. Kwee, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Lisa Edwards ("plaintiff") commenced this action against Jericho Union Free

School District (the "District"), Jericho Union Free School District Board of Education (the

"Board"), Henry L. Grishman, Benjamin Ciuffo, Barbara Bauer, Joseph Prisinzano, and Antony Sinanis, (collectively, "defendants") asserting causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. §§ 1981 and 1983, and the New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL"), which stemmed from the termination of plaintiff's employment with the District.  Presently before the Court is defendants' motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) and plaintiff's cross-motion to amend her Complaint, made pursuant to Rule 15.  For the reasons set forth below, both motions are granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the allegations contained in the proposed Amended Complaint ("Am. Compl.").

### I.    The Parties

Plaintiff is an African-American female who resides in Suffolk County, New York.  The District is an educational body organized under and governed by the laws of the State of New York, and is comprised of all public schools within the Public School System of Jericho, New York.  The Board is "a duly constituted administrative body" that has the power to, *inter alia*, appoint and hire employees of the District.  (Am. Compl. ¶ 7.)

Grishman was employed by the District at all relevant times as the Superintendent of the District.  Ciuffo worked as the District's Assistant Superintendent of Personnel and Educational Operations, and Bauer worked as the Assistant Superintendent of Curriculum and Instruction for the District.  Prisinzano was the Principal of Jericho High School ("Jericho High School"), and Sinanis worked as the Principal of Cantiague Elementary School ("Cantiague").

## II.    *Plaintiff's Employment Between 2006 and 2009*

In January 2006, plaintiff was hired as a part-time reading teacher, part-time tutor, and per diem substitute teacher in the District.  (*Id.* ¶ 17.)  In July 2006, plaintiff was appointed to a three-year probationary position as a Reading and ELA Support Teacher at Jericho High School. (*Id.*    ¶ 20.)  During her three-year probationary period, plaintiff was observed and evaluated by Prisinzano as well as other non-party "Curriculum Associates" employed by the District.  (*Id.* ¶ 21.)  These observations and evaluations were generally positive.  (*Id.* ¶¶ 22, 23.)  Toward the end of her probationary period, however, Ciuffo informed plaintiff that "he would not be recommending her for a tenured position."  (*Id.* ¶ 24.)  Ciuffo was "unable to provide [p]laintiff with an explanation for this decision."  (*Id.* ¶ 25.)  Customarily, the Jericho Teachers' Association (the "Union") received advanced notice from the District when a probationary teacher, such as plaintiff, was in jeopardy of not receiving tenure.  (*Id.* ¶ 28.)  In this case, however, the Union did not receive any advanced notice that plaintiff "was at risk of being denied tenure or that her performance was unsatisfactory."  (*Id.* ¶ 29.)

At plaintiff's request, a meeting regarding this decision was held in March 2009 and was attended by plaintiff, Bauer, Ciuffo, Prisinzano, other unnamed District employees, and a Union representative.  (*Id.* ¶ 30.)  For the first time, plaintiff was advised "that those present at this meeting . . . had 'serious' concerns about Plaintiff's job performance," although no specific examples of such concerns were given.  (*Id.* ¶¶ 32, 33.)  Plaintiff and her Union representative "voiced their concern that the Defendants' conduct was unsubstantiated, unprecedented and racially motivated."  (*Id.* ¶ 34.)  During a subsequent meeting between plaintiff, her Union representative, and Bauer, plaintiff was given "a list of 'goals' to be implemented for the

remaining 2008-2009 school year." (*Id.* ¶ 36.)  Plaintiff informed Bauer that she believed these stated goal "contradicted the evaluations, observations, and feedback that Plaintiff recently received." (*Id.*)  Plaintiff's final observations and evaluations for the school year were positive in nature.  (*Id.* ¶ 39.)

### III.    *Plaintiff's Transfer*

Subsequently, plaintiff was offered a fourth probationary year.  Bauer and Ciuffo informed plaintiff that she "would receive a mentor and additional guidance to ensure her success" in the District.  (*Id.* ¶ 37.)  Plaintiff accepted the offer.  (*Id.* ¶ 38.)  Plaintiff learned, however, that she was to be transferred from Jericho High School to Cantiague.  Both plaintiff and her Union representative "objected to this reassignment[,] stating that such a decision was unprecedented, discriminatory and implemented to sabotage the Plaintiff's chances of receiving tenure." (*Id.* ¶ 41.)  Throughout plaintiff's probationary employment period with the District, she had worked only at the middle school or high school level – never in elementary schools.  At the time of plaintiff's transfer, "there was at least one other teacher within the school district who had more experience with elementary children and who was available for reassignment." (*Id.* ¶ 43.)  Plaintiff's position at Jericho High School was filled by a "part-time Caucasian teacher who had less experience than the Plaintiff." (*Id.* ¶ 44.)

### IV.    *Plaintiff's Fourth Probationary Year at Cantiague*

Plaintiff commenced work at Cantiague in August 2009 under the supervision of Sinanis. Plaintiff contends that her "work environment became stressful and hostile" and that she was "subjected to unscheduled and unannounced classroom observations which caused her to feel anxious and intimidated." (*Id.* ¶ 46.)  Sinanis would "enter the Plaintiff's classroom

unexpectedly" and "stare at her from the back of the class and leave," in an effort to "harass and intimidate" her.  (*Id.*  ¶ 47.)  Plaintiff was "repeatedly asked to document every step," although Caucasian teachers were not required to do so.  (*Id.*  ¶ 49.)

Between November 14, 2009 and December 11, 2009, plaintiff was out of work on medical leave, which was "due [to] stress related symptoms caused by the treatment she was receiving while at work."  (*Id.*  ¶ 50.)  During her leave, plaintiff "received multiple harassing phone calls from District administrators questioning her intentions to return to work," even though she had already supplied the District with the appropriate paperwork.  (*Id.*)  When plaintiff returned to work, her "need for medical leave was held against her and she was accused of not completing assignments while absent."  (*Id.*  ¶ 52.)

According to plaintiff, defendants continued to engage in "discriminatory intimidation" against her after her return from medical leave.  (*Id.* ¶ 53.)  Defendants alleged that she had failed to administer tests and provide student services, even though these allegations "were contradicted by the Plaintiff's records."  (*Id.* ¶ 54.)  Although plaintiff "worked with a team of Caucasian teachers, she was singled-out when an issue arose."  (*Id.* ¶ 55.)  Plaintiff learned that certain documents in her personnel file had been "falsified to cover up the discriminatory and disparate treatment to which she was subjected."  (*Id.* ¶ 56.)  On a separate occasion, plaintiff "was directed to provide false information to a parent thereby jeopardizing her job and relationship with her student."  (*Id.*  ¶ 57.)

### V.    *Plaintiff's Employment is Terminated*

In January 2010, plaintiff and her Union representative met with Sinanis and Ciuffo, and plaintiff learned that she was to be terminated effective April 30, 2010.  Ciuffo offered to write

plaintiff a recommendation letter if she voluntarily resigned immediately.  Plaintiff was told that
if she did not resign, Ciuffo "had a lot of connections to other school districts."  (*Id.* ¶ 59.)
Plaintiff refused to resign effective immediately.  Subsequently, the Board "accepted the
recommendation" that plaintiff's employment be terminated, and her last day of work was April
30, 2010.  (*Id.* ¶ 67.)  Plaintiff alleges that she "is unaware of any instance where a fourth year
teacher was not granted tenure."  (*Id.* ¶ 66.)

## DISCUSSION

### I.     Legal Standard

#### A.     Motion to Dismiss

"'In deciding a Rule 12(c) motion, [a court] appl[ies] the same standard [regarding the
sufficiency of a pleading] as that applicable to a motion under Rule 12(b)(6), accepting the
allegations contained in the complaint as true and drawing all reasonable inferences in favor of
the nonmoving party.'"  *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2006)
(quoting *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)).  Rule 8(a) provides that a
pleading shall contain "a short and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has clarified the pleading
standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed
the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint
should not be dismissed for failure to state a claim unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See
Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks

6

omitted).   Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only

enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided

further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss.

First, a court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  "While legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at

679.  The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged.  The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

### B.  Motion to Amend

Under Rule 15(a), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).  A motion to amend may be denied, however, upon a showing of the futility of the proposed amendment.  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  "[T]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12 (b)(6) motion to dismiss – namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted."  *Crippen v. Town of Hempstead*, 2009 WL 803117, at *1 n.1 (E.D.N.Y. Mar. 25, 2009).

## II.  Plaintiff's Title VII Claims

In a Stipulation, which was "So Ordered" by the Court on November 7, 2011, plaintiff clarified that she is asserting her Title VII claims only against the District and the Board.  (*See* Docket No. 12.)  Plaintiff has moved to amend her Complaint to make clear that she is asserting not only Title VII discrimination claims, but also Title VII claims of retaliation and hostile work environment.  (Pl.'s Mot. to Amend at 4-5.)  Defendants do not appear to oppose this portion of plaintiff's motion to amend.  Accordingly, the Court grants plaintiff's motion to amend to the

extent that she seeks to amplify her Title VII causes of action to include claims of discrimination, retaliation, and hostile work environment.

## III.    Plaintiff's NYHRL Claims

Plaintiff also asserts discrimination, hostile work environment, and retaliation claims under the NYHRL.  Defendants assert that plaintiff's NYHRL claims must be dismissed because (1) plaintiff's claims are time-barred, as they are outside the one-year statute of limitations set forth in New York Education Law § 3813(1), and (2) plaintiff failed to comply with the notice of claim requirements set forth in New York Education Law § 3813(2-b).  (Defs.' Mot. to Dismiss at 7-12.)

"New York law requires that a plaintiff plead and prove compliance with Education Law § 3813's notice of claim and statute of limitations requirements."  *Moore v. City of New York*, 2010 WL 742981, at *9 (S.D.N.Y. Mar. 2, 2010) (citing *Amorosi v. S. Colonie Ind. Cent. Sch. Dist.*, 9 N.Y.3d 367 (2007)).  Section 3813(1) provides that "[n]o action or special proceeding, for any cause whatever" may be brought against a "school district, board of education, . . . or any officer of a school district [or] board of education" unless the plaintiff presented "a written verified claim" to "the governing body of said district or school within three months after the accrual of such claim."  N.Y. Educ. Law § 3813(1).  Section 3813(2-b) provides a one-year statute of limitations for any action brought against a school district, board of education, or officer thereof, other than actions sounding in tort.[1]  N.Y. Educ. Law § 3813(2-b).

_____

[1]         As discussed more fully in the text below, Section 3813(2) of the New York Education Law governs actions sounding in tort.

#### A.      Statute of Limitations

Defendants argue that because plaintiff's Complaint was not filed until July 7, 2011 – more than one year after the termination of her employment on April 30, 2010 – her NYHRL claims are time-barred.  (Defs.' Mot. to Dismiss at 8.)  Plaintiff appears to concede that her NYHRL claims against the District, the Board, Grishman, Ciuffo, and Bauer are time-barred. (*See* Pl.'s Opp'n to Mot. to Dismiss at 5-6.)  Plaintiff argues, however, that the one-year statute of limitations set forth in Section 3813(2-b) applies only to school districts, boards of education, and "officers" thereof, and that Prisinzano and Sinanis, as school principals, are not "officers" within the meaning of the statute.  (*Id.* at 5-6.)

Section 3813(2-b) makes clear that its one-year statute of limitations does not apply to every employee of a school district or board of education, but only those individuals referenced in Section 3813(1), i.e., "officer[s] of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four . . . ."  N.Y. Educ. Law § 3813(1), (2-b).  It is well-settled that school principals, such as Prisinzano and Sinanis, are not "officers" of the District or Board within the meaning of the statute.[2]  *See Rosenberg v. City of New York*, 2011 WL 4592803, at *16 (E.D.N.Y. Sept. 30, 2011) (principal and assistant principal are not officers under Section 3813(1)); *Lewinter v. N.Y. City Dep't of Educ.*, 2010 WL 2746334, at *7 (S.D.N.Y. July 9, 2010) (same); *Spencer v. City of New York*, 2007 WL 1573871, at *3

---

[2]      There is no assertion or allegation that this case involves a board of cooperative educational services, or a so-called Article 85 school.  "Article 85 schools are statutorily designated 'special schools,' including schools for the instruction of the deaf and blind, as are schools governed by Chapter 1060 under the 1974 laws."  *Richards v. Calvet*, 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005).

(S.D.N.Y. May 30, 2007) (same).  Accordingly, plaintiff's NYHRL claims against Prisinzano and Sinanis are not subject to the one-year statute of limitations set forth in Section 3813(2-b), but to the three year statute of limitations that normally governs State law claims of discrimination.  *See Rosenberg*, 2011 WL 4592803 at *17.

Thus, plaintiff's NYHRL claims against the District, Board, Grishman, Ciuffo, and Bauer are dismissed as time-barred.  Plaintiff's NYHRL claims against Prisinzano and Sinanis, however, are not dismissed on statute of limitations grounds.

### B.   *Notice of Claim Requirements*

Defendants also move for the dismissal of plaintiff's NYHRL claims on the grounds that plaintiff failed to adequately plead that she served a proper notice of claim, as required by Section 3813(1) of the Education Law.  (Defs.' Mot. to Dismiss at 11.)  Plaintiff has moved to amend her Complaint for the purpose of clarifying that she has, in fact, complied with this procedural requirement.  (*See* Pl.'s Mot. to Amend 4; Am. Compl. ¶ 15.)  Ultimately, however, the adequacy of plaintiff's pleading on this point is irrelevant because the only NYHRL claims remaining are those asserted against Prisinzano and Sinanis, and the notice requirements set forth in Section 3813(1) apply only to "officers" of a school district or board of education.  As set forth above, school principals do not constitute "officers" within the meaning of Section 3813(1), and, thus, the notice of claim requirements set forth in that statute do not apply to claims asserted against Prisinzano and Sinanis.  *See Lewinter*, 2010 WL 2746334 at *7; *Spencer*, 2007 WL 1573871 at *3.

11

C.     *The Merits of Plaintiff's NYHRL Discrimination Claims Against Prisinzano and Sinanis*

For the first time in their reply brief submitted in further support of their motion to dismiss, defendants argue that plaintiff has failed to allege that Prisinzano or Sinanis engaged in any conduct that would give rise to individual liability pursuant to the NYHRL.  While the Court would normally decline to address arguments raised for the first time in a reply brief, it will do so in this case given that defendants raised similar arguments as part of their opposition to plaintiff's motion to amend, and plaintiff had an opportunity to address the alleged conduct of Prisinzano and Sinanis in her reply brief submitted in further support of her motion to amend.

An individual may be liable for discrimination in violation of the NYHRL as either an employer, N.Y. Exec. Law § 296(1), or as an "aider and abettor," *id.* § 296(6).  Section 296(1) of the New York Executive Law prohibits an "employer" from discriminating based upon the "race, creed, [or] color" of an employee or job applicant.  N.Y. Exec. Law § 296(1)(a).  Individuals are liable as employers under Section 296(1) only if they have "an ownership interest," or if they "themselves, have the authority to 'hire and fire' employees."  *Gentile v. Town of Huntington*, 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)); *see also Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984) (per curium) (holding that an individual is not liable under the NYHRL as an employer unless he is "shown to have any ownership interest or any power to do more than carry out personnel decisions made by others").

Here, the Amended Complaint does not contain allegations sufficient to maintain a claim against either Prisinzano or Sinanis as an "employer" under Section 296(1).  Plaintiff does not

12

allege that either school principal had the power or authority to hire or fire plaintiff, or that they had the ability to do anything more than "carry out personnel decisions" made by the Board and/or District. *See Patrowich*, 63 N.Y.2d at 542. Accordingly, defendants' motion to dismiss any claims against Prisinzano and Sinanis pursuant to Section 296(1) of the NYHRL is granted.

Section 296(6), however, "provides a broader sense of personal liability" under the NYHRL. *Gentile*, 288 F. Supp. 2d at 321. That provision makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). An individual can be liable under Section 296(6) so long as he "actually participates in the conduct giving rise to a discrimination claim." *Tomka*, 66 F.3d at 1317.

With respect to Prisinzano, the Principal of Jericho High School, plaintiff argues that he "directly participated in the violation, by contributing to erroneous evaluations of the Plaintiff which were later used as a basis for her discharge, as well as failing to advise the Union of alleged performance issues, which notice was provided for white teachers." (Pl.'s Reply in Supp. of Mot. to Amend at 6.) The allegations actually pled in the Amended Complaint, however, do not dovetail with the above-quoted statement of counsel. In the Amended Complaint, plaintiff alleges that although Prisinzano's written evaluations were generally positive in nature and commended plaintiff's work performance, (Am. Compl. ¶¶ 21-23, 26), he was, nonetheless, one of those present during the March 2009 meeting who expressed "serious concerns" about plaintiff's work performance (*id.* ¶ 32.) Other than her conclusory assertion that this opinion, apparently shared by others present at the March 2009 meeting, was "racially motivated," (*id.* ¶ 34), she does not allege or otherwise articulate why Prisinzano's statement made during the

13

March 2009 meeting – which conflicted with his prior written evaluations – was discriminatory. Moreover, although plaintiff has alleged that the Union was not given advanced notice of the possibility that she, as a probationary teacher, would not receive tenure, (*id.* ¶ 28), she does not allege that Prisinzano was responsible for this alleged lapse in communication.  In short, plaintiff has failed to sufficiently allege that Prisinzano actually participated in any discrimination so as to give rise to liability under Section 296(6).

By contrast, plaintiff has sufficiently alleged that Sinanis actually participated in the alleged discriminatory conduct at issue.  Plaintiff asserts that, upon her transfer to Cantiague, her work environment "became stressful and hostile," in large part due to Sinanis's actions.  (*Id.* ¶¶ 45, 46.) Specifically, plaintiff alleges that Sinanis "would enter [her] classroom unexpectedly[,] stare at her from the back of the class and then leave," and she asserts that he engaged in such conduct with the purpose of "harass[ing] and intimidat[ing]" her.  (*Id.* ¶ 47.)  The Court finds these allegations sufficiently allege Sinanis's actual participation in the alleged hostile work environment so as to make dismissal of plaintiff's Section 296(6) claim against him inappropriate.

### D.    Merits of Plaintiff's NYHRL Retaliation Claims Against Prisinzano and Sinanis

As discussed above, plaintiff's NYHRL retaliation claims are time-barred except as they are asserted against Prisinzano and Sinanis.  Section 296(7) of the NYHRL prohibits "any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article . . . ."  N.Y. Exec. Law § 296(7).  In support of her retaliation claim, plaintiff alleges that she and her Union

14

representatives "[informally and verbally] charged the Defendants with disparate treatment and racial discriminatory practices in denying her tenure" and that plaintiff "refused to sign her final evaluation and her termination letter," on the grounds that these documents reflected defendants' racial discrimination.  (Am. Compl. ¶¶ 106, 107.)  As a result, plaintiff alleges, she was subjected to the following retaliatory conduct: (1) she was transferred from Jericho High School to Cantiague, (2) she was "subjected to unwarranted and unfounded charges relating to services she provided to her students," (3) she was "improperly reprimanded for medical-related absences from work," (4) she was "forced to sign documents which she knew were inaccurate and [was] threatened with immediate termination [if she refused]," and (5) she was "denied the opportunity to finish the 2009-2010 school year."  (*Id.* ¶¶ 108-113.)

Of the five instances of alleged retaliatory conduct set forth above, the only one that occurred while plaintiff was working at Jericho High School, where Prisinzano was the Principal, was the decision to transfer her to Cantiague.  Plaintiff does not, however, allege that Prisinzano made or played any role in that transfer decision.  (Am. Compl. ¶ 40.)  Indeed, plaintiff alleges that her final observations and evaluations for the 2008-2009 school year were positive, but "[d]espite these observations, . . . *the Defendants* decided to transfer the Plaintiff from the High School to Cantiague . . . ."  (*Id.* (emphasis added).)  Moreover, plaintiff does not allege that Prisinzano had any involvement in the allegedly retaliatory conduct that occurred at Cantiague.  Accordingly, plaintiff's NYHRL retaliation claim is dismissed as to Prisinzano.

Defendants' motion to dismiss plaintiff's NYHRL retaliation claim as against Sinanis, however, is denied.  Although the majority of the allegedly retaliatory conduct that occurred during plaintiff's employment at Cantiague is not directly attributed to Sinanis, (*see* Am. Compl.

¶ 54 (alleging that plaintiff was subjected to unwarranted "[a]llegations that [she] had not administered tests and failed to provide student services"), ¶ 51 (alleging that she received "multiple harassing phone calls from District administrators" while on medical leave)), the Amended Complaint can plausibly be read as asserting that Sinanis threatened plaintiff with immediate termination if she did not sign her final evaluation form, which plaintiff contended was "filled with inaccurate statements" (*id.* ¶¶ 63,64).  Because defendants' motion to dismiss focuses only on the question of whether plaintiff adequately alleged Sinanis's actual involvement in the alleged conduct (as opposed to the legal sufficiency of the claims themselves), and given the present procedural posture of the case, the Court declines to dismiss plaintiff's NYHRL retaliation claim as against Sinanis at this time.

## IV.    *Plaintiff's State Law Tort Claims*

Although plaintiff's third and fourth causes of action have headings indicating that they are brought pursuant to the NYHRL, they are actually common law causes of action for intentional infliction and negligent infliction of emotional distress.[3]  Defendants' only argument as to these claims is that they must be dismissed as against Bauer, because she is not named in the Notice of Claim.  (Defs.' Reply in Supp. of Mot. to Dismiss at 1-3.)

Section 3813(2) of the Education Law provides that any tort claim against a school district, board of education, or school district employee is subject to the notice of claim

---

[3]    Plaintiff seeks "compensation for mental anguish" pursuant to "§ 297 of the NYSHRL." (Am. Compl. ¶¶ 100, 104.)  That statutory provision, however, authorizes the Commissioner of the State Division of Human Rights to impose appropriate compensatory damages, including damages for mental anguish, after a hearing before that agency, *see Town of Hempstead v. State Div. of Human Rights*, 233 A.D.2d 451, 453 (2d Dep't 1996) (citing N.Y. Exec. Law § 297(4)(c)(iii)), and is, therefore, inapplicable to plaintiff's claims for intentional and negligent infliction of emotional distress.

requirements set forth in New York General Municipal Law Sections 50-e and 50-i.  N.Y. Educ. Law § 3813(2).  It is well-settled within both New York state courts and this Circuit that Section 50-e of the General Municipal Law requires a plaintiff to name each defendant in the Notice of Claim in order to maintain a cause of action against that defendant.  *See DC v. Valley Cent. Sch. Dist.*, 2011 WL 3480389, at *1 (S.D.N.Y. June 29, 2011) ("'General Municipal Law § 50-e makes unauthorized an action against individuals who have not been named in a notice of claim.'") (quoting *Tannenbaum v. City of New York*, 30 A.D.3d 357, 358 (1st Dep't 2006)); *Schafer v. Hicksville Union Free Sch. Dist.*, 2011 WL 1322903, at *11 (E.D.N.Y. Mar. 31, 2011).  Here, plaintiff has failed to name Bauer in the Notice of Claim.  (*See* Decl. of Dawn A. Lott, Esq., dated Dec. 5, 2011 ("Lott Decl."), Ex. 1.)[4]  Accordingly, plaintiff's causes of action for intentional and negligent infliction of emotional distress are dismissed as against Bauer.  *See Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 110 (E.D.N.Y. 2011); *DC*, 2011 WL 3480389 at *2; *Schafer*, 2011 WL 1322903 at *11.

## V.  *Plaintiff's Section 1983 Claims*

### A.  *Concurrent Title VII and Section 1983 Claims*

Plaintiff has moved to amend her Complaint to add a Section 1983 cause of action based upon defendants' alleged violation of her Fourteenth Amendment equal protection rights.  (Am. Compl. ¶¶ 117-18.)  Defendant argues that this portion of plaintiff's motion to amend should be denied as futile and assert that "[w]here both causes of action are based upon the same

---

[4]  "A notice of claim is properly considered on a motion to dismiss pursuant to Rule 12(b)(6) as an integral part of the complaint, since it is a precondition to bringing a tort claim against a municipality or municipal corporation."  *Tyrrell v. Seaford Union Free Sch. Dist.*, 2010 WL 1198055, at *2 n.1 (E.D.N.Y. Mar. 25, 2010).

underlying facts, a Title VII action forecloses a claim under § 1983." (Defs.' Opp'n to Mot. to Amend at 9.)

A plaintiff may not bring a Section 1983 action "to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). However, "[a] Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, such as a claim for denial of equal protection, so long as the § 1983 claim is based on a distinct violation of a constitutional right." *Id.* (quoting *Gierlinger v. N.Y State Police*, 15 F.3d 32, 34 (2d Cir. 1994)) (internal quotation marks omitted); *see also Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) ("A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, but a plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied.") (internal citation omitted).

Defendants contend that plaintiff "has failed to sufficiently distinguish her [claim] for relief under Title VII from her [claim] for relief under [Section] 1983." (*See* Defs.' Opp'n to Mot. to Amend at 10.) To the contrary, however, the Proposed Amended Complaint explicitly states that plaintiff's Section 1983 claim is based upon alleged violations of her Fourteenth Amendment equal protection rights. Therefore, if plaintiff has "asserted cognizable violations" of the Equal Protection clause, she may properly maintain a Section 1983 claim concurrently with her Title VII claim. *See Saulpaugh*, 4 F.3d at 143.

**B.    *Sufficiency of Plaintiff's Section 1983 Claims***

Defendants make only two arguments as to the sufficiency of plaintiff's Section 1983 equal protection claim. First, defendants assert that plaintiff has failed to allege facts sufficient to

18

give rise to municipal liability on the part of the District.  (Defs.' Opp'n to Mot. to Amend at 12.)
Specifically, defendants contend that plaintiff has failed to "specify[] or particulariz[e] whether it
is the DISTRICT's policy or practice, as a municipal entity, to allegedly deny equal protection
based on race."  (*Id.*)  Second, defendants argue that plaintiff has failed to sufficiently allege the
personal involvement of each individual defendant in the alleged constitutional violation.  (*Id.* at
13-17.)

### 1.    <u>Municipal Liability</u>

A municipality may be held liable under Section 1983 for its employees' alleged
constitutional violations only if the alleged conduct was undertaken pursuant to "a policy
statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers"
or a "governmental 'custom' even though such a custom has not received formal approval
through [ ] official decisionmaking channels."  *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S.
658, 690-91 (1978).  "To show a policy, custom, or practice, the plaintiff need not identify an
express rule or regulation."  *Patterson*, 375 F.3d at 226.  Rather, it is "sufficient to show . . . that
a discriminatory practice of municipal official was so 'persistant or widespread' as to constitute
'a custom or usage with the force of law,' or that a discriminatory practice of subordinate
employees was 'so manifest as to imply the constructive acquiescence of senior policy-making
officials.'" *Id.* (internal citations omitted).

Here, plaintiff alleges that District employees' unconstitutional conduct was undertaken
as part of the District's "custom or practice of denying equal protection to Plaintiff and others
based on their race," that "these practices were so persistent and widespread that they constitute
the constructive acquiescence of policymakers," and "the individual policymakers directly

19

participated in and/or tacitly condoned the discrimination."  (Am. Compl. ¶ 118.)[5]  The Court

finds these allegations are merely "[t]hreadbare recitals of the elements of a [*Monell*] cause of

action" and are "supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 555).  As the Supreme Court has made clear, legal conclusions alone –

unsupported by factual allegations – cannot survive a Rule 12(b)(6) motion to dismiss.  *See id.* at

679.  Accordingly, plaintiff's motion to amend her Complaint to assert a Section 1983 claim

against the District and Board is denied as futile.

### 2.   **Personal Involvement**

Second, defendants argue that plaintiff has failed to sufficiently allege the personal

involvement of Grishman, Ciuffo, Bauer, Prisinzano, or Sinanis, as is required to maintain a

Section 1983 claim against them.  (Defs.' Opp'n to Mot. to Amend at 13-17.)  "It is well-settled

in [the Second Circuit] that personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983."  *Middleton v. City of New

York*, 2006 WL 1720400, at *13 (E.D.N.Y. June 19, 2006) (quoting *Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994)) (internal quotation marks omitted, alteration in the original).

Additionally, if the individual defendant holds a "supervisory position," he may be held liable

under Section 1983 if he (1) "failed to remedy the wrong" "after learning of the violation through

a report or appeal," (2) "created a policy of custom under which unconstitutional practices

occurred, or allowed such a policy or custom to continue," or (3) was "grossly negligent in

managing subordinates who caused the unlawful condition or event."  *Wright v. Smith*, 21 F.3d

---

[5]     The Court presumes the term "institutional Defendants," as it is used in this cited
paragraph of the Amended Complaint, refers to the District and the Board.

496, 501 (2d Cir. 1994) (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)); *see also Tekula v. Bayport-Blue Point Sch. Dist.*, 295 F. Supp. 2d 224, 233 (E.D.N.Y. 2003) (applying these liability principles to school superintendent and administrator).

Here, plaintiff has failed to adequately allege the personal involvement of Grishman or Prisinzano.  With respect to Grishman, his position as Superintendent of the District, standing alone, is "an insufficient basis for the imposition of personal liability."  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977); *see also Wright*, 21 F.3d at 501 ("Nor can [Commissioner] Coughlin be held personally responsible simply because he was in a high position of authority in the prison system.").  Other than an allegation that Grishman served as the Superintendent, the proposed Amended Complaint is devoid of any allegations detailing Grishman's role in the alleged discrimination or retaliation against plaintiff.  Plaintiff argues that Grishman "made the recommendation not to grant Plaintiff tenure despite the union representative's repeated charges of racial discrimination."  (Pl.'s Reply in Supp. of Mot. to Amend at 6.)  The paragraphs of the proposed Amended Complaint cited by plaintiff, however, do not contain this allegation.  (*See id.* (citing Am. Compl. ¶¶ 34, 41).)  With respect to Prisinzano, for the reasons stated above in connection with plaintiff's failure to allege NYHRL discrimination or retaliation claims against this individual defendant, the Court concludes that plaintiff has failed to adequately allege Prisinzano's personal involvement in any alleged constitutional violation.

Plaintiff has, however, sufficiently alleged the personal involvement of Ciuffo, Bauer, and Sinanis.  Ciuffo made the allegedly discriminatory recommendation that plaintiff not receive tenure.  (Am. Compl. ¶ 24.)  With respect to Bauer, plaintiff alleges that after Bauer heard plaintiff's allegations that the recommendation not to award her tenure was discriminatory, Bauer

asked for time to formulate a list of reasons supporting that decision, and subsequently provided plaintiff with a list of pretextual criticisms that contradicted prior positive evaluations.  (*Id.* ¶¶ 34-36.)  Finally, the Court finds that plaintiff has sufficiently alleged Sinanis's personal involvement for the reasons discussed in connection with plaintiff's NYHRL claim against him.

Accordingly, plaintiff's motion to amend her Complaint to add a Section 1983 claim is granted as to Ciuffo, Bauer, and Sinanis, and is denied as futile as to Grishman and Prisinzano.

## VI.  *Plaintiff's Section 1981 Claim*

Defendants argue that if plaintiff is permitted leave to amend her Complaint to add a Section 1983 claim, her request for leave to add a Section 1981 claim should be denied as futile because "a § 1981 cause of action is dismissable as of right, and could not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) where Plaintiff has already asserted a § 1983 cause of action against the Defendants."  (Defs.' Opp'n to Mot. to Amend at 8.)

Defendants support their argument with a citation to the Supreme Court's decision in *Jett v. Dallas Independent School District*, 491 U.S. 701, 705 (1989).  (*See id.*)  In *Jett*, the Supreme Court examined "whether 42 U.S.C. § 1981 provides an independent federal cause of action for damages against local governmental entities, and whether that cause of action is broader than the damages remedy available under 42 U.S.C. § 1983, such that a municipality may be held liable for its employees' violations of § 1981 under a theory of *respondeat superior*."  *Jett*, 491 U.S. at 705.  In answering that question, the Supreme Court held as follows:

> We hold that the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.  Thus to prevail on his claim for

> damages against the school district, petitioner must show that the
> violation of his "right to make contracts" protected by § 1981 was
> caused by a custom or policy within the meaning of *Monell* and
> subsequent cases.

*Id.* at 735-36.  Contrary to defendants' assertion, this holding does not stand for the proposition

that a plaintiff may not simultaneously maintain claims against state actors under Sections 1981

and 1983.  (*See* Defs.' Opp'n to Mot. to Amend at 7-9.)  Rather, it makes clear that a

municipality cannot be liable for a violation of a plaintiff's rights enumerated in Section 1981

solely under the doctrine of *respondeat superior*.  Instead, to establish municipal liability for a

Section 1981 claim, a plaintiff must meet the standards articulated by *Monell* and its progeny.

*See Jett*, 491 U.S. at 735-36; *see also Patterson*, 375 F.3d at 226 ("[W]hen a defendant is sued

for discrimination under § 1981 or § 1983 is a municipality . . . the plaintiff is required to show

that the challenged acts were performed pursuant to a municipal policy or custom.") (citing *Jett*,

491 U.S. at 733-36).

Defendants make no other arguments as to the sufficiency of plaintiff's Section 1981

claim.  Accordingly, plaintiff's motion to amend its Complaint to assert a cause of action

pursuant to Section 1981 is granted.

*CONCLUSION*

For the reasons set forth above, defendants' motion to dismiss the Complaint is granted in part and denied in part, and plaintiff's motion to amend the Complaint is granted in part and denied in part.  Defendants' motion to dismiss is granted as to plaintiff's NYHRL claims against the District, Board, Grishman, Ciuffo, Bauer and Prisinzano, but is denied as to plaintiff's NYHRL claims against Sinanis.  Further, defendants' motion to dismiss plaintiff's intentional and negligent infliction of emotional distress claims is granted as to Bauer, but is denied as to the remaining defendants.

Plaintiff's motion to amend the Complaint is granted to the extent that she will be permitted to amplify her Title VII causes of action to include claims of discrimination, retaliation, and hostile work environment.  Further, plaintiff's motion to amend the Complaint to add Section 1983 claims against Ciuffo, Bauer, and Sinanis is granted, but that portion of the motion is denied as to her proposed Section 1983 claims against the Board, the District, Grishman, and Prisinzano.  Finally, plaintiff's motion to amend her Complaint to add a Section 1981 claim is granted.  Plaintiff shall file and serve an Amended Complaint that conforms to these rulings within thirty (30) days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
      November 16, 2012               _____/s/_____
                                        Denis R. Hurley
                                        Unites States District Judge