UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
------------------------------------------------------
LISA EDWARDS,

                Plaintiff,

      -against-

JERICHO UNION FREE SCHOOL
DISTRICT, JERICHO UNION FREE
SCHOOL DISTRICT BOARD OF
EDUCATION, HENRY L. GRISHMAN, in his
official capacity as Superintendent and
individually, BENJAMIN CIUFFO, in his
official capacity as Assistant Superintendent
and individually, BARBARA BAUER, in her
official capacity as Assistant Superintendent
and individually, JOSEPH PRISINZANO, in
his official capacity as Principal and
individually, ANTONY SINANIS, in his
official capacity as Principal and individually,

                         Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-3261(DRH)(SIL)

**A P P E A R A N C E S :**

**For the Plaintiff:**
**DANDENEAU & LOTT**
425 Broad Hollow Road, Suite 418
Melville, NY 11747
By:   Dawn A Lott, Esq.
        Gerald V. Dandeneau, Esq.

**For the Defendants:**
**INGERMAN SMITH, LLP**
150 Motor Parkway, Suite 400
Hauppauge, NY 11788
By:   Christopher M. Powers, Esq.
        David Ferdinand Kwee, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Lisa Edwards ("Edwards" or "plaintiff") commenced this action against

defendants Jericho Union Free School District (the "District"), Jericho Union Free School District Board of Education (the "Board"), Henry Grishman ("Grishman"), Benjamin Ciuffo ("Ciuffo"), Barbara Bauer ("Bauer"), Joseph Prisinzano ("Prisinzano"), and Antony Sinanis ("Sinanis") (collectively "defendants") asserting claims of race-based discrimination, a hostile work environment, and retaliatory employment practices in violation of 42 U.S.C. § 2000(e) ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983,  New York State Human Rights Law ("NYSHRL"), Executive Law § 296, and state claims of intentional and negligent infliction of emotional distress.  Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") seeking dismissal of all of plaintiff's claims.  For the reasons set forth below, the defendants' motion is granted.

## BACKGROUND

The following facts, drawn from the parties' Local Rule 56.1 statements and the parties' submissions are undisputed unless otherwise noted.

*Plaintiff's Employment at the District*

Plaintiff is an African-American woman.  Plaintiff began her employment at the District as a part-time Middle School one-on-one reading teacher and a *per diem* substitute teacher and Learning Center Tutor.  Plaintiff began working as a probationary Reading Teacher and ELA Support Teacher at Jericho High School ("the High School") in September of 2006.  Plaintiff's responsibilities included providing reading instruction to students with disabilities and providing students with additional support services to help them with the ELA curriculum.  It is undisputed that plaintiff was appointed for a probationary period of three years and that generally the Superintendent of Schools, who at all times relevant to this case

2

was Grishman, makes a recommendation to the Board to grant tenure to a probationary teacher. Generally, such a recommendation is made after consulting with administrators such as assistant superintendents, curriculum associates, and building principals.

During the time that plaintiff was employed, the District had a practice of conducting at least four observations per year of all probationary teachers as well as one mid-year evaluation and one end-of-year evaluation of each probationary teacher. As part of this practice, those conducting the observations created written reports, and the teacher and the observer participated in meetings to discuss the observation. In addition, principals and curriculum associates performed informal observations by way of a "walk-through" whereby the administrator would come in the teacher's room and observe a segment of a lesson.

Throughout plaintiff's three year probationary period, she received various criticisms and recommendations. For example, Prisinzano, the principal at the High School testified that upon review of plaintiff's 2006-07 mid-year evaluation, he had "a very serious concern" about plaintiff's "alignment of activities and skill attainment." (Prisinzano Dep. at 55-56.) Moreover, plaintiff's January 2009 evaluation contains various suggestions regarding plaintiff's performance as an ELA teacher including a statement that "[a]dditional work planning for differentiation will need to be accomplished for this setting to be more successful." The evaluation also states that "flexible grouping is a must to better meet the varied functioning levels in these classes." (Ex. N.) Similarly, plaintiff's June 2009 evaluation states, *inter alia*, that plaintiff's "needed area of growth . . . would be to provide opportunities for students to engage in active reading and writing" and again reiterates the need for "[f]lexible grouping." (Ex. O.)

On or about March of 2009, Ciuffo, the Assistant Superintendent of Personnel and

3

Education Operations, advised plaintiff that there was a possibility that she would not receive tenure. At or around this time plaintiff also met with Bauer, the Assistant Superintendent of Curriculum and Instruction. Subsequently, plaintiff requested a meeting with various administrators including Ciuffo and a union representative that took place in March of 2009. At this meeting, plaintiff informed those present that she was being treated differently than other teachers and that she "kn[ew] what this [was] about," but she did not mention race. (Pl.'s Dep. at 358.) At some point during the meeting, plaintiff was advised that the District agreed to extend her probationary period another year and plaintiff agreed to accept this offer. In March of 2009, administrators provided plaintiff with a written plan with instructional goals that would assist her in focusing on the areas she needed to improve upon.

Plaintiff claims that while at the High School Prinsinzano covertly expressed racial bias toward her through his evaluations, daily communications, and conferences. Moreover, she claims that Prisinzano was "getting more aggressive in terms of being critical" during the 2007-08 year. Plaintiff, however, admits that she never made a formal complaint about discrimination to anyone involved with the District's administration.

*Plaintiff's Employment at Contiague Elementary*

In or about May of 2009, plaintiff was advised that she would be transferred to the District's Elementary school for her fourth probationary year, the 2009-10 school year. The District claims that it had a legitimate nondiscriminatory reason for transferring plaintiff because there was a reading position open at Contiague, and there was not an immediate need for a full-time reading teacher at the High School. Plaintiff, however, claims that there was a need for a reading teacher at the High School as evidenced by the fact that upon her departure, the District hired Robyn Stern, a white Caucasion female, to replace her. Defendants admit

4

that in August of 2009, after more accurately assessing the High School's needs, the District did advertise for a part-time reading teacher at the High School and that they ultimately hired Robyn Stern.

Sinanis, the principal at Contiague, typically performed "announced" observations of teachers, meaning that he would inform the teacher ahead of time when he was going to be conducting an observation. Sinanis testified that he "had concerns about [plaintiff's] instruction." (Sinanis Dep. at 83.) Additionally, plaintiff's mid-year evaluation report of January 2010 noted that plaintiff had difficulty "engag[ing] in long-term planning for students to meet individual goals and scaffold skills and activities according to needs and achievement levels" and "determin[ing] deep, clearly aligned lesson objectives and provid[ing] multiple pathways for students to attain them." (Ex. T.)

Plaintiff claims she felt intimidated by Sinanis although she admits that Sinanis stood outside her classroom door to informally observe her less than five times during the 2009-10 school year spending no more than five to ten minutes each time. Plaintiff, however, claims that she was treated differently in that during other teachers' observations Sinanis interacted with those teachers and students, but did not interact with her during her observations. Plaintiff claims that during the fall of her fourth year she experienced intimidation, stress, and hostility causing her to experience anxiety, panic attacks, and stress-related worsening of her physical condition forcing her to go on medical leave in and around November 14, 2009 to December 11, 2009. As noted above, plaintiff admits that she never complained of racial discrimination to the District's administration, but contends that she complained to her union, the Jericho Teachers Association through her representatives Lois Burn and Maryann Risi as early as November 2009.

5

Some time during plaintiff's fourth year, after her mid-year evaluation and before April of 2010, on or about February of 2010, Ciuffo advised plaintiff that she would not be receiving tenure. Her last day of work at the District was April 30, 2010. Plaintiff subsequently filed a Complaint with the New York State Division of Human Rights ("NYSDHR") on May 27, 2010. On April 19, 2011, the NYSDHR dismissed the complaint on grounds of administrative convenience such that plaintiff could pursue a federal action, after which plaintiff commenced the current action on July 7, 2011.

## *DISCUSSION*

### *I. Applicable Law and Legal Standards*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts

6

that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not implausible." *Id*. at 211 (citing *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v.*

*Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id*. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II. *Plaintiff's Title VII Discrimination Claim*

### A. *Legal Standard*

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting "formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence. This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Under McDonnell Douglas and its progeny, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) she belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d

128, 137-38 (2d Cir. 2003). The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal." *Roge v. NYP Holdings, Inc*., 257 F.3d 164, 168 (2d Cir. 2001). It is a burden of production, not persuasion, and involves no credibility assessments. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143, 120 S. Ct. 2097,147 L. Ed. 2d 105 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted). The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co*., 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc*., 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non." See *Reeves*, 530 U.S. at 143. To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. Am. Exp. Co*., 853 F.2d 151, 154-55 (2d Cir. 1988). "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any

9

concrete particulars, would necessitate a trial in all Title VII cases." *Meiri*, 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143. Finally, "the standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII. *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 2008) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim")). "Accordingly, the New York Executive Law inquiry is subsumed within the Title VII analysis." *Id*.

    **B.**    *Application to Plaintiff's Discrimination Claim*

As described above, the Court begins its analysis by determining whether the plaintiff has made out a *prima facie* case of discrimination. Here, the defendants do not contest that the plaintiff, as an African American, is a member of a protected group, nor do they dispute that she was qualified to perform her job. The parties dispute, however, whether the plaintiff suffered any adverse actions that occurred under circumstances giving rise to an inference of discrimination.

According to plaintiff, "[t]he adverse employment actions the Plaintiff suffered include negative evaluations and observations while at the High School and Contiague Elementary; denial of tenure in 2008-09 school year; transfer to Contiague; written reprimand by Sinanis; denial of tenure in 2009; termination in 2010." (Pl.'s Mem. in Opp'n at 9.) Moreover, she argues that her replacement at the High School by Robyn Stern, a Caucasian female, is sufficient evidence of an inference of discrimination. (*Id*. at 11.) Defendants, however, contend that Stern was not

10

plaintiff's replacement because she worked only part-time and was hired solely as a reading teacher, whereas plaintiff worked full time and performed the duties of both a reading and an ELA teacher.

Even assuming, however, that plaintiff could establish a *prima facie* case of discrimination based on the fact that she was replaced by Stern, she has not provided any evidence that defendants' articulated reasons for transferring her to Contiague, i.e., that there were concerns with plaintiff's teaching performance at the High School, were a pretext for discrimination. *See Pesok v. Hebrew Union College – Jewish Institute of Religion*, 235 F. Supp. 2d 281, 286-87 (S.D.N.Y. 2002) (holding that plaintiff's replacement by individual outside of protected class did not in and of itself raise evidence of pretext). Moreover, plaintiff has not raised a genuine issue of fact as to whether any of defendants' actions were motivated by discrimination. Plaintiff cites *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), for its proposition that "[a] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," yet plaintiff fails to offer evidence from which the trier of fact could conclude that the defendants' concern about plaintiff's performance, as noted in her evaluations, was false. Plaintiff's offering of evaluations from other teachers to demonstrate that "[r]ecommendations were typically contained in every teacher's observation" (Pl.'s Mem. in Opp'n at 13) does nothing to discredit those recommendations and criticisms found in plaintiff's evaluations. Moreover discrimination cannot be inferred merely from plaintiff's testimony that she was one of only two African-American teachers in the District without further detail indicating that discrimination occurred during the process of hiring any of the other teachers in the District. (Pl.'s Aff. ¶ 26.)

Furthermore, the Court finds unavailing plaintiff's argument that pretext can be inferred

11

because the District did not advise the Union that it had concerns about her performance. According to plaintiff, "the District policy was to advise the Union of those teachers where concerns existed and whose tenure was questionable," however, the District did not do so in her case. "It is true that [a defendant's deviation] from procedural regularity . . . *can* raise a question as to the good faith of the process where the [deviation] may reasonably affect the decision." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 45 (2d Cir. 2000) (internal quotation marks and citations omitted). Here, however, plaintiff has not presented any evidence that the defendants' failure to advise the union that they were going to deny her tenure in any way affected their decision to deny tenure. As a result, the plaintiff has not presented any evidence upon which a reasonable trier of fact could find that the District's actions were motivated by discrimination and plaintiff's Title VII discrimination claims are dismissed.

### III.     *Plaintiff's Title VII Hostile Work Environment Claim*

In order to establish a hostile work environment claim, a plaintiff must prove: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and brackets omitted), *abrogated on other grounds*. "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U .S. 17, 21 (1993)); *see also Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006) ("Plaintiff must show not only that she subjectively perceived the

environment to be abusive, but also that the environment was objectively hostile and abusive.").

"Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.' " *Demoret,* 451 F.3d at 149 (quoting *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 227 (2d Cir. 2004)). However, "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment," and instead, courts are to "view the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Alfano,* 294 F.3d at 379. What is necessary is that plaintiff establish a link between the actions by defendants and plaintiff's membership in a protected class. *Id.* at 374; *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001). Moreover, hostile work environment claims under the NYSHRL "are analyzed under the same standard as Title VII hostile work environment claims." *Russo v. N.Y. Presbyterian Hosp.,* 972 F. Supp. 2d 429, 449 (E.D.N.Y. 2013).

Here, plaintiff fails to raise a genuine question of fact that there exists a link between the defendants' allegedly hostile actions and the plaintiff's race. *Alfano,* 294 F.3d at 378 (holding that in order to make out a hostile work environment claim, plaintiff must provide evidence indicating that the defendant's actions were motivated by discrimination). While facially neutral circumstances may be considered as part of the totality of the circumstances, a plaintiff must provide some basis from which a jury could rationally infer that these race-neutral actions were discriminatory. *See Id.* As noted in the Court's analysis of plaintiff's Title VII claim, plaintiff has not raised a genuine question of fact as to whether defendants' actions were based on race. *See DeFina v. Meenan Oil Co., Inc.,* 924 F. Supp. 2d 423, 438–39

(E.D.N.Y. 2013) ("Plaintiff has simply not shown—through evidence of [race] related comments or actions, through evidence of other similarly situated co-workers who were not subjected to the same conduct, or through any other evidence—how the alleged conduct was discriminatory based on plaintiff's [race]."). As a result, plaintiff's hostile work environment claim is dismissed.

## IV. *Plaintiff's Title VII Retaliation Claim*

Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)). "In order to present a prima facie case of retaliation under Title VII . . ., a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [] he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity," and "[3] that the employer took adverse action against the plaintiff." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation omitted). In addition, the Supreme Court recently clarified the causation standard required by § 704(a) stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," as distinct from "a motivating factor," which had previously been the standard in the Second Circuit. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 2013 WL 3155234, *16 (June 24, 2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting

framework set forth in *McDonnell Douglas*. *See Terry*, 336 F.3d at 141. Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action. If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Slattery v. Swiss Reinsurance. Am. Corp*., 248 F.3d 87, 94-95 (2d Cir. 2001). Traditionally, courts have applied the same standards for proving retaliation under the NYSHRL that are applied under Title VII. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P. C.,* 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating ... retaliation claims are identical under Title VII and the NYSHRL." (citation omitted)).

Here, defendants contend that plaintiff has not raised a genuine issue of fact as to whether she engaged in protected activity because it is undisputed that plaintiff "never complained to anyone at the District about any aspect of her employment." (Defs.' Mem. in Supp. at 16.) According to defendants, "Plaintiff first engaged in protected activity when she filed a complaint with the NYSDHR on or about May 27, 2010," and by that time "her employment relationship with the District had already been severed." (*Id*.) Plaintiff claims, however, that "conversations with her Union represent[atives] concerning the disparity in treatment" constitute protected activity. (Pl.'s Mem. in Opp'n at 18.) In support of her position, plaintiff cites to e-mails with Maryann Risi and notes from a meeting with another union representative. (*See* Exs. 17, 27, 33.)

"[A]n employee need not establish that the conduct she opposed was in fact a violation of Title VII, but rather, only that she had a good faith, reasonable belief that the underlying employment practice was unlawful." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal quotation marks and citations omitted). However, "[i]t is objectively unreasonable to believe that complaining about poor treatment in the workplace entirely

15

unrelated to any trait, protected or otherwise, is a 'protected activity' under Title VII." *Johnson v. City Univ. of N. Y.*, 2014 WL 4412475, at *4 (S.D.N.Y. Sept. 8, 2014); *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 16 (2d Cir. 2013). Moreover, to the extent the evidence cited by plaintiff provides any evidence that she complained about discrimination to the union representatives, (Pl.'s Dep. at 289-91) there is no evidence that those representatives actually brought plaintiff's discrimination complaints to the attention of anyone in the District. In fact, Risi testified at her deposition that she never had a conversation with any of the defendants about plaintiff's claims of discrimination. (Risi Dep. at 80-82.) Therefore, plaintiff has failed to raise a question of fact regarding the second element of her *prima facie* case, i.e., whether defendants were aware of her protected activity.[1] *See Grant v. New York State Office for People with Developmental Disabilities*, 2013 WL 3973168, at *9 (E.D.N.Y. Jul. 30, 2013) (holding that plaintiff's complaint to union representative did not constitute defendant's "general corporate knowledge" of protected activity where there was no evidence that union representative actually contacted defendant). As a result, plaintiff's retaliation claim must fail.

## V.     *Plaintiff's 42 U.S.C. §§ 1981 and 1983 Claims*

### A.     *Legal Standard*

Plaintiff asserts claims pursuant to 42 U.S.C. § 1981 against all of the defendants. 42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the right "to make and enforce contracts." This section prohibits discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship,

---

[1] Although plaintiff's Ex. 27, an e-mail from Risi to plaintiff expresses that Risi would speak to Bauer regarding plaintiff's complaints about being observed, this e-mail makes no mention of potential discrimination and does not suggest that Risi actually did notify Bauer.

such as employment." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d. Cir. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000)). Additionally, plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against Ciuffo, Bauer, and Sinanis. 42 U.S.C. § 1983 allows an individual to bring an action against a "person, who, under color of any statute, ordinance, regulation, custom or usage, of any State...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." It is not itself a substantive right, but provides a method for vindicating federal rights such as equal protection under the Fourteenth Amendment. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Here, plaintiff alleges that the named defendants "denied the Plaintiff equal protection of the laws in that they discriminated against the Plaintiff in the terms and conditions of her employment . . . in violation of the Fourteenth Amendment to the Constitution of the United States; and Article I of the Constitution of the State of New York." (Amend. Compl. ¶ 132.)

### B. *Application to Plaintiff's § 1981 Claim*

The *McDonnell Douglas* analysis applies to both Title VII discrimination claims and claims under § 1981. *Johnson v. Cty. of Nassau*, 480 F. Supp. 2d 581, 605 (E.D.N.Y. 2007). As a result, since plaintiff has not provided sufficient evidence raising a discrimination claim under Title VII, her claims under § 1981 must fail as well. *See id*. (quoting *Patterson*, 375 F.3d at 225) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . and the factors justifying summary judgment dismissing Patterson's Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981

17

and 1983.") Similarly, retaliation and hostile work environment claims under § 1981 are generally analyzed in the same manner as under Title VII. *Acosta v. City of New York*, 2012 WL 1506954 at *8 (S.D.N.Y. Apr. 26, 2012) ("Claims of retaliation under [Title VII and § 1981] are generally analyzed in the same way, with the same standards of liability."); *Johnson v. Long Island Univ.*, 2014 WL 4926324, at *5 (E.D.N.Y. Sept. 30, 2014). Since this Court has dismissed plaintiff's Title VII retaliation and hostile work environment claims, her § 1981 retaliation and hostile work environment claims are also dismissed.

### C. *Application to Plaintiff's Fourteenth Amendment Claims*

Plaintiff concedes that the Court should use "the same *McDonnell Douglas* framework to analyze [equal protection] cases brought pursuant to § 1983." (Pl.'s Mem. in Opp'n at 20.) As discussed above, under the *McDonnell Douglas* analysis, plaintiff's claims do not withstand summary judgment, and therefore, her Fourteenth Amendment claims also fail. Moreover, since the reach of the New York equal protection clause, Article I § 11, "is co-extensive with the federal provision," plaintiff's state equal protection claims also fail. *See Bostick v. Suffolk County*, 191 F. Supp. 2d 665, 674 n.6 (E.D.N.Y. 2002).

### VI. *Negligent and Intentional Infliction of Emotional Distress*

Liability for negligent or intentional infliction of emotional distress will be found only where the "defendant engaged in conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Meadows v. Planet Aid, Inc.,* 676 F. Supp. 2d 83, 97–98 (E.D.N.Y. 2009) (citations and internal quotation marks omitted); *accord Romero v. City of New York,* 839 F. Supp. 2d 588, 630–31 (E.D.N.Y. 2012). Further, while a plaintiff is not required to show that he suffered physical injury as part of his claim for negligent infliction of

emotional distress, "the circumstances under which recovery may be had for purely emotional harm are extremely limited," and, therefore, the plaintiff's claim "must generally be premised upon breach of a duty owed directly to plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety." *Meadows,* 676 F. Supp. 2d at 98 (quoting *Blake v. Race,* 487 F. Supp. 2d 187, 219 (E.D.N.Y. 2007)) (internal quotation marks omitted).

Here, Plaintiff argues that "the record reveals that [she] was subjected to continued observations and evaluations after the decision had been made to terminate her." (Pl.'s Mem. in Opp'n at 19.) Plaintiff, however, fails to present any argument that this conduct rose to the level of outrageous character required to sustain her claims. Moreover, the Court finds that Plaintiff's allegations, even if assumed to be true, fall short of the type of outrageous conduct required to state a cause of action for negligent or intentional infliction of emotional distress. Accordingly, these claims are dismissed.

## *CONCLUSION*

For the foregoing reasons, Defendants' motion for summary judgment pursuant to Rule 56 is granted in its entirety, and plaintiff's claims are dismissed in their entirety.

**SO ORDERED.**

Dated: Central Islip, New York
October 29, 2014

/s/
Denis R. Hurley
United States District Judge